E4SDDLEWS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                               13 Cr. 298 (TPG)

DEVON LEWIS,

               Defendant.

------------------------------x

                                            New York, N.Y.
                                            April 28, 2014
                                            4:45 p.m.

Before:

                    HON. THOMAS P. GRIESA,

                                     District Judge


                          APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  ANDREW ADAMS
     Assistant United States Attorney

JENNIFER BROWN
     Attorney for Defendant

Case 1:13-cr-00298-AJN   Document 22   Filed 05/29/14   Page 2 of 20      2
E4SDDLEWS

1                (Case called)

2                MR. ADAMS:  Good afternoon, your Honor.  Andrew Adams
3     for the United States.  And with me is Postal Inspector Steve
4     Barrientos.

5                DEPUTY CLERK:  Is the defendant ready?

6                MS. BROWN:  Yes.  Good afternoon, your Honor.
7     Jennifer Brown on behalf of Mr. Lewis.

8                THE COURT:  I need to have some discussion with you
9     before I hear from you, and that arises from the fact that the
10    presentence report calculation of a guideline range is based on
11    the idea that we would be applying the career offender factor.

12               I think the government agrees that that should not be
13    done, and I agree that that should not be done.  The offenses,
14    earlier offenses, were at a young age, they were serious, but
15    at a young age, and so we're not going to apply the career
16    offender factors.

17               MR. ADAMS:  Your Honor, if I may, just to clarify the
18    government's position.

19               With respect to calculating the correct guidelines
20    range, we do believe that the career offender provisions are
21    applicable, and that the presentence report correctly
22    identifies the range.

23               What I've set forth in our letter, and what I have
24    permission from our office to represent today, is that we are
25    not seeking a guideline sentence in this case; we are seeking a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  significant sentence of imprisonment.  We do believe, given
2  that there are two prior violent felonies in Mr. Lewis'
3  history, that a sentence above what we had originally estimated
4  in our Pimentel letter would be appropriate in this case.
5         But for purposes of walking through the procedure of
6  the 3553(a) factors, we do believe that the career offender
7  guidelines are applicable.
8         As we set out in my letter, although Mr. Lewis was 16
9  at the time of the two prior violent felonies, at the time that
10 he was convicted of those felonies and at the time that he was
11 sentenced for them, we believe that the Second Circuit case law
12 on point would lead to those convictions being cognizable as
13 prior adult convictions for purposes of the career offender
14 guidelines.  In particular, Mr. Lewis was tried in an adult
15 court, he was sentenced to a significant term of imprisonment,
16 which he served in adult facilities.  Those are the principal
17 bases on which the Second Circuit has looked to determine
18 whether or not career offender guidelines apply, despite a
19 youthful offender adjudication.
20        THE COURT:  I think what you're saying in court is
21 consistent with your letter.
22        What did you say in the Pimentel letter?
23        MR. ADAMS:  Your Honor, the Pimentel letter comes out
24 to a guidelines range of 78 to 97 months.  The principal
25 difference there is that the criminal history records that my

1    office has access to are not as extensive as those that the
2    probation office has access to.
3             Had we known about the prior two violent felonies, we
4    would have been consistent with the probation office's
5    calculation as of the time I wrote the Pimentel.
6             After getting the initial probation presentence
7    report, I submitted to the Court a request to unseal the
8    probation office's sealed records.  The Court granted that
9    application.
10            After reviewing those, after sharing those with
11   defense counsel, I put in the government's sentencing letter
12   acknowledging that the government does take the position that
13   the probation office has the correct guidelines calculation,
14   despite our position that a below guidelines, but still
15   significant and higher than the Pimentel sentence, would be
16   appropriate in this case.
17            THE COURT:  This is all set out in good detail in your
18   letter, so the government's position is clear.  All right.
19            Let me go now to the defense counsel and see what
20   issues you want to raise.
21            MS. BROWN:  Your Honor, I think you have correctly
22   identified my position, which is that the career offender
23   guideline should not be applied in this case, both as a legal
24   matter, but also even if it's --
25            THE COURT:  Why don't you go over to the podium.

E4SDDLEWS

1      MS. BROWN:  Your Honor, our position is that the
2 career offender guideline should not be applied in this case,
3 both as a legal matter and in the spirit of the career offender
4 enhancement; that is that to say, either as a guideline matter
5 or in any sense of the word, that a young man who makes two
6 mistakes in a very short period of time, basically a one- or
7 two-month period when he's 16 years old, that as a matter of
8 sentencing law, and the New York State courts choose to set
9 aside his conviction so he's not stigmatized for the rest of
10 his life as a felon in New York State, that they understand --
11      THE COURT:  Go over that last point again.
12      MS. BROWN:  When he was sentenced for those two
13 offenses, it was on the same day he received a single sentence,
14 your Honor, of one and a third to four years.  And at the time
15 he was adjudicated by the New York State court to be a youthful
16 offender.
17      The purpose of that adjudication is for someone of his
18 age, so that they are not stigmatized by having the collateral
19 consequences of a felony conviction follow him for the rest of
20 his life at age 16.  It's specifically designed with an eye
21 towards rehabilitation, with an understanding that at 16 years
22 old, to stigmatize a young man, could have very adverse
23 consequences.
24      So that is not to say that he wasn't punished for his
25 crimes at age 16; he was.

Case 1:13-cr-00298-AJN   Document 22   Filed 05/29/14   Page 6 of 20      6
E4SDDLEWS

1          THE COURT:  And the sentence was?

2          MS. BROWN:  One and a third to four years, a single
3  sentence was imposed to run concurrently on both counts, your
4  Honor.  So, both robberies.  He served one single sentence of
5  one and a third to four years, which was the maximum permitted.

6          When somebody is adjudicated as a youthful offender,
7  that's part of the consideration that it can be no more.  So as
8  a 16 year old, he couldn't serve any more than one and a third
9  to four years, your Honor.

10         Not only did New York State consider that his youth
11 was an important consideration, and also obviously they knew
12 the nature of the offenses at the time that the New York State
13 court adjudicated under the youthful offender, but then while
14 it's true he was in adult facilities, your Honor, he spent a
15 substantial portion of his sentence in programs that are
16 designed for rehabilitation, as in Shock Incarceration, and a
17 drug treatment program, again indicating New York's
18 understanding that the proper response for a 16 year old who
19 gets in trouble like that, who's just recently lost the only
20 mother figure that he had, is entitled to some consideration of
21 rehabilitation and not strict punishment.

22         So then, the New York State court, having taken this
23 approach, both in the sentencing and the collateral
24 consequences, then to have the federal courts say, actually, on
25 that day in October when you were 16 years old and sentenced,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   we are going to consider you a career offender based solely on
2   this one sentence on this one day, I think that just flies in
3   the face of what it means to be a career offender.
4           How can you be a career anything on your very first
5   sentence, and when you're 16 years old?
6           That is why we object to the application of the career
7   offender guideline, your Honor.
8           THE COURT:  Let me say this:  I agree with you.  I
9   think to say that he is something called a career offender,
10  because of those two convictions when he was 16, is really
11  offensive.
12          Your client was given a chance, he was given a chance
13  to lead a law-abiding life, and those matters that occurred
14  when he was 16 years old would have gotten out of the picture
15  of his life.
16          The real problem here is that he committed a very
17  serious offense for which he's now being sentenced.  So the
18  chance of leaving those 16 year-old matters behind him, he
19  really didn't throw it away, but he has certainly not come up
20  to the standard that he might have come up to.
21          I think the government has briefed the matter well,
22  and I think the government, on the points of law and all, I'm
23  sure, is on sound ground, and I really don't want to argue with
24  that.  But, as a judge sitting here, I don't agree with it, as
25  a matter of being a judge sitting in this sentence.  I don't

1    think he's a career offender; I think he's an offender, and he
2    committed recently a very serious offense, for which he has to
3    be sentenced.
4             So as a matter of, fact and as a matter of his life, I
5    want to say that I don't consider him a career offender.  I
6    don't care how many citations the government has in its letter
7    and so forth.  But, what we have now is a serious matter that
8    has to be dealt with in the sentence now.
9             Let's talk about the guideline range, because we have
10   to talk about the guideline range.
11            I want to go through it, because the presentence
12   report, I'm not sure it's on the same basis that I'm on.  But
13   here's the basis I'm on, and I don't think it departs much, if
14   at all, from the presentence report.
15            The base offense level is 14, and there are certain
16   additions that are listed on page seven of the presentence
17   report, which I don't think anybody contests, that add up to
18   seven.  So you start with 14, you add seven, you get to 21.
19            I believe there should be an enhancement for
20   vulnerable victim, that adds two; I believe there should be an
21   enhancement for official capacity, that adds six.  That brings
22   us to 29.
23            MS. BROWN:  Your Honor, may I be heard on those last
24   two enhancements.
25            THE COURT:  Of course, you may.

1            MS. BROWN:  First, I'll start with the vulnerable
2    victim, and this was in our papers as well.  The reason that I
3    don't think the vulnerable victim applies is that the Circuit
4    has said that merely someone's age as a class is not sufficient
5    in and of itself.
6            And in this case, I recognize that the postal worker
7    was 69 years old, your Honor, which is, relative to my client
8    obviously, older.  But, he was not specifically targeted
9    because of his age, and the assault wasn't changed in any way
10   because of his age.
11           The government countered back that, well --
12           THE COURT:  Look, this is a waste of time.
13           MS. BROWN:  Okay.
14           THE COURT:  He was a vulnerable victim.  That's it.
15           MS. BROWN:  Okay.  Can I register an objection to the
16   official victim enhancement, your Honor?
17           THE COURT:  Okay.
18           MS. BROWN:  With respect to that again, he has to be
19   motivated by his status as an official victim.
20           And in this case, the motive was robbery, obviously.
21   It was not motivated by the fact that he was a postal worker
22   per se, your Honor, simply motivated by the unlawful desire to
23   get --
24           THE COURT:  I disagree with you.  I'm going to apply
25   it.

E4SDDLEWS

1           MS. BROWN:  Okay.

2           THE COURT:  Now, that takes us to 29.  And then

3   acceptance of responsibility, three.  I'll reduce it by three.

4           For my own guidance and judgment, I am not going to

5   add the career offender factor.  And that means that there's a

6   range of 78 to 97 months, Criminal History Category VI, and

7   that means a sentencing range of 120 to 150 months.

8           That, in my view, is a sensible sentencing range

9   applying the facts of this case and the facts of this man.

10          MS. BROWN:  Your Honor, I'm confused, because on the

11  one hand you mentioned 78 to 97 months, and then you mentioned

12  a different range with category VI.  I was under the

13  understanding that category VI applied only if he was a career

14  offender.

15          MR. ADAMS:  Your Honor, if I may.

16          THE COURT:  You may be right.  You may be right.

17          MR. ADAMS:  Your Honor, in the event that the Court is

18  not going to apply the career offender enhancement, given that

19  there is this second underlying violent felony, my calculation

20  would be different than it is in Pimentel, you would get to, at

21  the same base offense level and offense level enhancements that

22  you've just recited, by my calculation, you would add two more

23  criminal history points, which would bring you to Criminal

24  History Category IV, which at offense level 26 is 92 to 115

25  months.

1            THE COURT:  Say that again.  I didn't follow you
2    completely.
3            MR. ADAMS:  Yes, your Honor.
4            In the Pimentel, which results in a 78 to 97, that's
5    based only on the one underlying violent felony from when he
6    was 16.
7            If you factor in the second violent felony, you get
8    two more criminal history category points, which takes you to a
9    total of seven criminal history category points by my
10   calculation.
11           Seven points brings you to Criminal History Category
12   IV.  And at 26 offense levels, that's a sentencing range of 92
13   to 115 months.
14           MS. BROWN:  Your Honor, that would be taking into
15   account one criminal history point for the possession of
16   marijuana at age 16, which would move him from category III to
17   category IV, which would move him from 78 months at the low end
18   to 92 months at the low end.
19           THE COURT:  This sentencing discussion is turning into
20   something like preparing your income tax return.
21           Now, look, all I'm trying to do sitting here is to get
22   a sensible guideline range.  I'm not going to impose a sentence
23   under the guideline range, but I want to get a sensible
24   guideline range established as being what the judge believes is
25   a range.

Case 1:13-cr-00298-AJN   Document 22   Filed 05/29/14   Page 12 of 20    12
E4SDDLEWS

```
 1              It seems to me what Mr. Adams said is helpful, because
 2     the Pimentel letter did not deal with the career offender
 3     concept, right?
 4              MR. ADAMS:  That's correct.  Nor did it deal with the
 5     second underlying guideline.
 6              THE COURT:  That's right.
 7              So the Pimentel letter discussion is of use.  And if,
 8     as Mr. Adams -- he didn't suggest it, but he noted -- if you
 9     add the second factor of -- what is it?
10              MR. ADAMS:  This would be the --
11              THE COURT:  The official?
12              MR. ADAMS:  I'm sorry.  The government agrees
13     completely with your Honor.
14              THE COURT:  Oh, yes.  But you add the second
15     conviction?
16              MR. ADAMS:  Yes, sir.  That brings it, he would have
17     three underlying convictions at that point, rather than the two
18     in the Pimentel, and it would come to seven points, which is
19     category IV.
20              MS. BROWN:  Your Honor, I understand that argument.
21              THE COURT:  Let me just follow through.  Just another
22     minute.
23              How do you come out, the factors you have discussed?
24              MR. ADAMS:  Your Honor, first, may I pass up the page
25     of the Pimentel letter with the criminal history calculation?
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E4SDDLEWS

1       THE COURT:  Yes.  Just go over it with me.
2       MR. ADAMS:  Yes, sir.
3       THE COURT:  Where do you come out?
4       MR. ADAMS:  The conviction that's not reflected there
5  is the underlying robbery conviction.  That was revealed in the
6  probation office's report.
7       As you'll see on the calculation that I just handed
8  up, there are two points for the attempted robbery committed
9  when the defendant was 16, there's one point for a marijuana
10 conviction, and now there would be two more points for the
11 robbery conviction committed in 2009.
12      THE COURT:  Another robbery?
13      MR. ADAMS:  Yes, sir.
14      There was an attempted and a completed robbery, both
15 of which were handled with an adjudication of youthful offender
16 status.
17      With those convictions, plus the fact that he was
18 under a term of probation at the time that he committed the
19 instant offense, you come to seven criminal history points, and
20 that comes to category IV.
21      THE COURT:  What do you mean, category -- oh, Criminal
22 History Category IV?
23      MR. ADAMS:  Yes, sir.  Rather than three, as is
24 currently reflected in the Pimentel.  And it would not be six,
25 as the career offender guidelines would have.

E4SDDLEWS

1            THE COURT:  And you're at what offense level?
2            MR. ADAMS:  I agree with your calculation.  Twenty-six
3    would be the correct offense level.
4            THE COURT:  Offense level 26, criminal history
5    category of IV?
6            MR. ADAMS:  Comes to 92 to 115 months.
7            THE COURT:  I think I mentioned maybe some different
8    figures, but this, in my view, is indeed a sensible view of a
9    guideline range.  So I'll take that as the guideline range.
10           What do we do about the sentence to be imposed?
11   That's what we need to discuss now.
12           MS. BROWN:  Your Honor, I tried to provide some
13   guidance to the Court with some of the other cases that I have
14   found in this district that involved similarly serious conduct,
15   because I don't disagree with you, your Honor, that Mr. Lewis
16   is to be sentenced for a serious offense today.
17           That was the reason that I provided to you the other
18   cases, one of which was fairly recently, in which the gentleman
19   caused regrettably even more injury during the assault of a
20   female postal worker, your Honor.  And Judge Oetken imposed a
21   sentence of 51 months.  And that gentleman in the case that I
22   provided to you had a, I think, arguably more serious criminal
23   record than the youthful offender adjudications Mr. Lewis had.
24   So I was trying to give some proportionality as to what might
25   be appropriate.

Case 1:13-cr-00298-AJN   Document 22   Filed 05/29/14   Page 15 of 20      15
E4SDDLEWS

1          I based my request, your Honor, of 46 months falling
2  somewhere between the 12-month and one-day sentence that had
3  been imposed in the Neville Patterson case, and the 51 months
4  that had been imposed in the Hightower case, your Honor.  And a
5  sentence of roughly four years, your Honor, I think is not
6  insignificant.  He'll be 25 years old.  He's still only 21
7  years old, your Honor.
8          As set forth both in the presence report and in my
9  letter, your Honor, Mr. Lewis has had a very, very challenging
10 and difficult upbringing, and has really lacked, from the age
11 of 14 or 15 years old, when the mother figure that he knew, the
12 aunt --
13         THE COURT:  That was his aunt?
14         MS. BROWN:  That was his aunt, your Honor, because his
15 mother was addicted to crack cocaine.  I think, likely, she was
16 using crack cocaine while he was in utero, your Honor, so he
17 really didn't have a chance from the outset.  But there was a
18 stabilizing figure, the aunt, and he was very, very close with
19 her.  And then at age 14 or 15, which is a very difficult and
20 vulnerable time for a young boy, that is when she died.  And
21 really, things fell off the rails for him.
22         I'm happy, your Honor, that he has four family members
23 in court today.  There are two of his sisters, Natifa and
24 Fatima, and two of his brothers, Joseph and Domonick.  But at
25 the time when he was 14 or 15, your Honor, they had their own

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   problems, they had just lost their mother figure, and they
2   really weren't able to fill that void, to fill that gap, and
3   thus began a very turbulent and chaotic time for Mr. Lewis, who
4   was depressed and began using drugs, and really fell into
5   criminality.
6           This is going to be, obviously, a substantial
7   sentence, but his intention is to use this time that you
8   sentence him to to really get his life together so that he can
9   emerge from this the semblance of a man who can choose to do
10  differently and choose to act differently.
11          I know, your Honor, that it's symbolic, the turning of
12  21, becoming a man in the eyes of the law, but I do think it's,
13  for him, to be in the MDC, to be in federal prison facing a
14  very substantial prison time at that pivotal moment in his life
15  was very eye opening.  And this is not the way that he wants
16  his life to be going.
17          So he recognizes that there are consequences, and I
18  understand that it's a serious offense, but it seems to me that
19  an approximately four-year sentence, your Honor, strikes the
20  right balance.
21          The reason I provided those other cases was to put it
22  in context, because I know the Court has to be cognizant not to
23  create unwarranted sentencing disparities.  And so there has to
24  be something to look at if we're saying that the guidelines are
25  not necessarily the only factor.

1    THE COURT:  Would your client wish to make any
2 statement?
3    MS. BROWN:  Yes, your Honor, he does.
4    THE COURT:  All right.
5    MS. BROWN:  I did get two letters from his family
6 members today.  I only just recently received them.  In
7 substance, your Honor, they speak --
8    THE COURT:  You want to pass them up, please?
9    MS. BROWN:  Yes.
10    The letters speak to his sister and his brother's
11 commitment to supporting him when he gets out of prison, your
12 Honor.  They're handwritten.
13    I showed them to the government, I'm handing them up
14 now.  But I do think that's going to be important for him, your
15 Honor.  His brothers and sisters, who didn't have the capacity
16 necessarily to be there for him when he was 14 and 15, are more
17 mature now, your Honor, and they will be there for him when he
18 gets out at perhaps age 25.
19    THE COURT:  Let me just say that I appreciate very
20 much the family members being here today.  Thank you for being
21 here.
22    All right.  Does your client wish to make any
23 statement?
24    MS. BROWN:  I think he does, your Honor.
25    THE COURT:  All right.

1           MS. BROWN:  Should he stay where he is, though?

2           THE COURT:  Yes.  As long as you speak into the
3   microphone so I can hear you.

4           Why don't you go over to the lecturn.

5           THE DEFENDANT:  I would like to say I'm very sorry for
6   the pain I have caused.  And with the time that I'm being
7   sentenced, I will use this time very wisely to get the rest of
8   my life together, to get back into school.  Any programs that
9   the jail would have for me, I would enter.  And, your Honor,
10  thank you for giving me this chance to speak.

11          THE COURT:  All right.  Thank you.

12          Let's now come to the sentence, the two counts.  And
13  we discussed the guideline range in some length.  The
14  guidelines are advisory and they are not mandatory.  I
15  considered them, but I have no intention of imposing a sentence
16  up to the guideline range.

17          It seems to me that the sentence has to reflect the
18  background of this man, and it's difficult, and it cannot be so
19  high as to ignore that.

20          Nevertheless, a serious and violent crime was
21  committed, and that is what we're dealing with.

22          I'm therefore imposing a sentence of 72 months in
23  prison on Count One, 72 months in prison on Count Two, and
24  those sentences are to be served concurrently.  I'm imposing a
25  sentence of three years' supervised release on each of Counts

```
 1   One and Two.  Those supervised release terms are to be served
 2   concurrently.  There will be no fine.  And there will be a
 3   special assessment of $200.
 4            Has there been any agreement which waives the right of
 5   appeal and motion?
 6            MR. ADAMS:  No, your Honor.
 7            THE COURT:  All right.
 8            So there's a right of appeal and motion.
 9            And that concludes our proceeding.  Thank you.
10            MR. ADAMS:  Your Honor, if I may, before we conclude.
11            The probation office has requested that the issue of
12   restitution be put over.  And the government has been reaching
13   out to the victim in this case.
14            THE COURT:  I'll adjourn restitution to a date that we
15   agree on.
16            MR. ADAMS:  Thank you, sir.
17            THE COURT:  Thank you.  All right.
18            MS. BROWN:  Your Honor, could you recommend in the
19   judgment that he serve his sentence as close as possible to the
20   New York area to facilitate family?
21            THE COURT:  Certainly.  I'll do that.
22            MS. BROWN:  Thank you.
23            THE COURT:  All right.
24            MR. ADAMS:  Your Honor, sir, the final thing I would
25   ask, and I apologize if I missed it during our earlier
```

E4SDDLEWS

1  discussion, but I would just ask that the facts of the
2  presentence report be adopted.
3            THE COURT:  I understand.  All right.
4            MR. ADAMS:  Thank you, sir.
5            (Adjourned)